The next case up for argument is Global Industrial Investment Limited v. 1955 Capital Fund Good morning. Good morning, Your Honor. May it please the Court, David Cooper on behalf of the appellants, the 1955 Capital GPs. I'd like to reserve three minutes for rebuttal. This appeal concerns an extreme and seemingly unprecedented arbitration award. The award not only ordered the premature dissolution of two venture capital funds, but it also ordered that the limited partner, China Fortune, could choose the liquidator. The practical and inevitable result of that order is that China Fortune chose a person who, by the very terms of the hiring agreement, can do nothing substantive without China Fortune's approval. This result is diametrically opposed to the terms of the partnership agreement and well outside the authority that the parties granted to the arbitrator. In fact, the arbitrator candidly admitted his theory was that his, quote, power trumped the agreement. That's wrong as a matter of law. Which authority? The authority to dissolve or the authority to have the other party choose a liquidator in the absence of agreement? Both. Both. So I think, and to start with the question of whether there should be a, whether dissolution itself was inconsistent with the agreements, I think it's important to start with the arbitration provision itself. So the arbitration provisions has two important provisions. The first is that the arbitrator shall not be authorized to reform, modify, or materially change the agreement. The second is that any equitable remedy must be, quote, within the scope of the agreement. So the bottom line is that an equitable remedy cannot materially change the agreement, has to be within the scope. I understand that. Isn't this focused on the interpretation of section 10.2 where, isn't this your strongest argument to say that the agreement says the partnership shall dissolve prior to the end of the partnership's term under two conditions, neither of those conditions were met, therefore the arbitrator doesn't have authority. Is that your argument? That is the argument, correct. So the problem that I have with that argument, and you can tell me where I'm missing it, is this says the partnership shall dissolve prior to the end of the partnership's term. Is that, I mean, you think that that still applies here because it still is the end, it's prior to the end of the partnership's term? It is prior to the end of the partnership's term. And if we go back to section 2.1 of the agreement, what it says is the term of the partnership shall continue unless, unless it's dissolved pursuant to section 10.2. So section 2.1 makes clear that the, that the venture capital funds continue for a certain term. They only end, that is the word unless, they only end prematurely if the requirements of section 10.2 are met, and the arbitrator agrees, all the parties agree that the requirements of section 10.2 were not met. And one of the, one of the difficulties, obviously, for your clients here is just the standard of review. And, you know, so I guess the question I would have, some of the arguments you're making resonate, but then I'm asking, well, are they not arguably correct on the other side or plausibly? I mean, these are the kind of language we've used in affirming arbitrator's decisions in situations like this. Sure. So I think there are a couple of key distinctions here than in the normal case. The first and probably most important one is that the arbitrator here was not interpreting the agreement. So there's no interpretation from the arbitrator to defer to. The district court did. The district court said, I rely on sections 2.2 to 2.4. That's not what the arbitrator said. What the arbitrator said was, I believe that I have the authority to dissolve these. Under Delaware law. Under, under Delaware law, yes. Under Delaware law. But why, I mean, we may or may not agree with that, but why, I mean, I guess you would have a stronger position, it seems to me, if the agreement said these are the only reasons you can't look to any others and you can't look to Delaware law. OK, that that would be one thing. That's not what the agreement says. The agreement says it shall dissolve prior to the end under these two circumstances. But it doesn't say these are the only two or you can't look to Delaware law in addition to that. So I think, first, when it uses the word unless, I do believe that that means expressly that those are the only conditions that could apply. But the other important point to consider is that it's not as though the arbitrator said, oh, I believe that this is, quote, within the scope of the agreement, or that this is not materially changing the agreement. Because I think we have to read both the ---- Sotomayor, I think there's no question that you have a better argument from a textual standpoint in interpreting 10.2. But I think the arbitrator recognized that. And I'm not sure if the other side isn't even disputing that the conditions under 10.2 really haven't met. But what the arbitrator did is to say, look, the parties have agreed to be bound by Delaware law. And under Delaware law, my powers are broad. I can order dissolution when it's really not reasonable to see how the partnership agreement could be really carried out. And given the violations in this particular case, that fits. So once we cross that threshold of, oh, okay, well, it's plausible to say Delaware law applies, and that's a plausible interpretation of Delaware law to invoke the broad power of dissolution, we don't get to second-guess any further than that. Isn't that how we should look at this case? No. And the reason is because the arbitration provision itself makes clear it's not as So they gave the arbitrator all power under Delaware law to come up with any remedy consistent with Delaware law. Does it constrain the arbitrator's powers under Delaware law? It constrains the arbitrator's powers in two ways. The arbitrator cannot materially change the agreement, and the arbitrator's remedy must be within the scope of the agreement. But I think that's the problem that I'm having, is I don't — I mean, maybe if I were hearing this as a district court, I would agree with you, but I'm not sure that that provision expressly says you can't look to Delaware law. I mean, these are kind of — these are complicated issues. And so I think we would have to say that it's a 100 percent certainty — I think we'd actually have to go beyond that. Not just is it a 100 percent certainty that Delaware law could not be considered under the agreement, but that that was actually raised to the arbitrator, and he recognized that that was true and still chose to reject it. So I don't think it's true that this Court has to defer to this question of was it within the scope of the agreements and whether Delaware law can trump that, because the question of whether or not it's within the arbitrator's own authority, in other words, his authority to decide his own authority, was not granted to him either. So under first options, if the parties don't give the arbitrator the authority to decide his own authority, then that authority is not considered sort of as part of the deference that normally goes to the arbitrator. So there is a predicate question of his authority to go to perform this kind of disillusion when the agreement does not allow for it. And I think it's clear that this is a material change to the agreement. It's hard to imagine a bigger material change than ending the agreement when the agreements do not allow for it to be ended. I actually think you have a stronger argument on the liquidator. Tell me what we would do if we thought, I mean, first of all, what ended up happening? I take it the parties never agreed, well, you haven't pursued it because it's on appeal. So you haven't even tried to figure out whether you can agree on a liquidator or not? So what happened was China Fortune chose, before the confirmation of the award, China Fortune chose someone who they wanted to be the liquidator. First, they suggested their own agent. We said, no, you can't do that. And we also said it's premature before confirmation of the award. Then they said, well, we've already chosen someone else, a person named Mr. Fitzgerald. We — this is before the confirmation of the award, to be clear. And basically, the terms of the agreement with Mr. Fitzgerald are such that he cannot, cannot decide on what to do in a liquidation without China Fortune's consent. And, of course, we objected to that as improper. And what the district court did was it stayed the disillusion pending appeal. So there's been no actual disillusion. And this question of who can be the liquidator, how that person exactly can be chosen under the terms of the award, if the award were to stand, has not been decided. The district court said we're going to wait for the appeal to result. Has the arbitrator — has the arbitrator approved Mr. Fitzgerald? No, because the arbitrator is now functus officio. So the arbitrator issued the award saying the party should spend three months trying to agree on one, and if not, then China Fortune can choose one. But, of course, by that time, the arbitrator was gone. The arbitration was over. And so there's no practical way for the — But is there — are you precluded from going back to the arbitrator and saying we don't approve — we don't think Mr. Fitzgerald is appropriate? I don't think that there's a procedural mechanism for us to do that, because the arbitration doesn't exist anymore, and the arbitrator is functus officio. So there's no way for us to sort of — I mean, I guess in theory, you could — you could have a new arbitration where you tried to decide these things. But as a practical matter, I don't think it's actually possible to have a remand to the same arbitrator to say, hey, what did you mean by this? Did you think Mr. Fitzgerald is consistent with, you know, what you had in mind? And I think this is the problem when you get farther and farther from the agreement, right? You take one step, another step, another step, and now you're so far outside it that nobody has any idea really what to do. So what would we do if we disagree with you on all the other issues, but we thought the liquidator — you know, the choice of the litigator provision was problematic? That that actually did violate the agreement because the agreement specifically says — I mean, I guess there's still some wiggle room to get around it. But say we agreed with you on only that point. What would we do? Sure. So I think — I think that what the court would have to do would be to vacate the entirety of the disillusion remedy. And the reason I say that is because it's clear that what the arbitrator thought was, I want to have a disillusion, but I don't think that the GP should do it. And what's totally unclear is if you could have a disillusion — But he may have had authority — may have possibly had authority to order the disillusion, but not the liquidator. So what would we do if we concluded that? That's my question. Right. He may have had — so assuming that he had that authority to do the disillusion, but not to order that China Fortune could choose the liquidator, the problem is we don't know what — whether the arbitrator would then have issued the remedy of, we're going to have a disillusion, but the GP — That doesn't seem to me that's the question we would ask. If we thought that he made an error in that specific provision, would we just strike that — would we just not affirm that provision in the agreement? Or in the — excuse me, in the arbitration award? Sure. So what — the question would be essentially whether those two things are connected such that it would be hard to disentangle them. Okay, I understand. What if we say they're not? What if we just — I know you don't want to answer my question because you don't want — but what if we just said the liquidator's the problem? Would we just — would we just say we affirm the arbitral award, all provisions except for this one? I mean, this Court certainly could do that, but — so as a — I know that's not what you want, but you say — but you — that would be a possibility. It's a — it's certainly a possible outcome, but — But what would happen if we disentangled the issues? If — What would happen? If this Court said we can disentangle it and we're going to — then presumably what would — well, first of all, it would be a remand, and I assume the District Court would then sort of, you know, govern the proceedings going forward. But I think then what would happen is the GPs would perform the liquidation under the terms of the agreement. So I actually think it would be a much more straightforward form of liquidation because 10.2 sets forth how the liquidation is conducted by the GPs. I mean, part of the problem — part of the problem — and this goes to the wiggle room I was referencing before — is that the agreement says if the fund dissolves under Section 10.2, I actually don't think that the fund was dissolved under Section 10.2. In fact, I think you would — I think you agree with that, that the fund was not dissolved under 10.2 because neither of those conditions were met. So actually, that's the first sentence of 10.2b. But I'd call this Court's attention to the second sentence of 10.2b. So the first sentence is, in the event the partnership is dissolved pursuant to the provisions of 10.2 — okay, put that aside for the moment — the next sentence says, except as provided in the immediately preceding sentence, the general partnership carry out the duties of the liquidator hereunder. So under that — You think that's a catch-all that would say you always — the problem is that almost undercuts your first argument because it suggests that there's other ways of dissolving other than just 10.2. Otherwise, why would you have that term? Anyway. Well, I mean — It becomes a circular argument a bit. Well, it's certainly not circular when it comes to the choice of a liquidator because I think that sentence is as unambiguous as it can possibly be, that under all circumstances, any — you know, except as provided. So under any other circumstance, the general partner will function as the liquidator. It's unambiguously clear. And to be clear, the arbitrator did not say otherwise. The arbitrator specifically said — and I call this Court's attention to paragraph 503 of the award — my power trumps that provision, not that I interpret that provision differently. But isn't that just a reading of the agreement, to say I have powers that the agreement gives me and I'm — I'm regarding those as essentially applying here and not the powers of 10.2 or the authorities of 10.2? So he didn't say that's the power that the agreement gives me. He said I have — I have the power as the arbitrator, not as the power citing a provision that gives him that power. And ultimately, what it comes down to is this would be unquestionably a material change in the agreement. It is absolutely implausible. It is implausible to say that there would not be material change when it says the general partner shall conduct it, and instead the limited partner conducts the arbitration effectively through a third party. Can you — maybe in your rebuttal, you can take some time to explain why this matters. I have a general sense for why it matters, but — and I'll ask opposing counsel here the same thing, but it might just be something to think about. Sure. I'd be happy to address that in the rebuttal. Thank you. Thank you. May it please the Court, Julian Poon of Gibson Dine on behalf of Apple East, Global Industrial Investment Limited, and China Fortune Land Development Company Limited. Both — all aspects of the arbitrator's well-reasoned 227-page award that is judicially confirmed in full by the district court can and should be — must be affirmed under this Court's binding precedence, especially this Court's decision less than two years ago, I believe, in Hay Day Farms — Very good opinion. — versus — excellent opinion. One of the best opinions — It's right on the mark there, where it says, despite the Court's, quote, serious concerns with the interpretation proffered by the arbitrator and partially upheld by the district court, this Court affirmed the part of the arbitrator's award that the district court confirmed and vacated the portion of the district court's order that vacated in part part of the arbitrator's award. And it — it hearkened back to the Supreme Court's precedence in Oxford Health and other cases that said, you know, we owe stringent deference, even if we think that the arbitrator got it wrong. It's not a question of the rightness or wrong. We — we recognize that the review of the arbitrator's decision is highly deferential. But take me through where the arbitrator's authority really comes from, because I think from a textual standpoint, they've got a far better argument in terms of the arbitrator's decision being completely contrary to what the agreement contemplated. I would disagree with that, Your Honor. But I would certainly agree on the standard of review very — being very difficult as the — Well, certainly 10.2 have not been met, right? None of the conditions have been met. 10.2, as I believe Judge Nelson and Judge Bress alluded to, it never says only. It never says exclusive. My friend on the other side reads that word in. It simply sets forth, as the district court explained and the arbitrator explained, it's just, quote, two additional scenarios. All 10.2 is is a term defining the natural length or term of the partnerships. And it simply says, read with 2.1, the parties can agree to wrap things up earlier before the 7- or 10-year term is up, or the GPs may withdraw. It says nothing about a third-party external authority, a judicial or arbitral officer ordering dissolution. And that's — that's the key here. The conjectures here are read against the background of Delaware law, against centuries of equity jurisprudence. Dissolution has always been part of the arsenal of equity. Sotomayor, it's the agreement to be bound by Delaware law that's the linchpin for the beginning of the analysis? It is. That's certainly part of the linchpin. It's also the Delaware Revised Uniform Limited Partnership Act, 17802, that we've cited, that — and that the arbitrator cited as well. And I really would like to draw the Court's attention to Sections 14.5 and 15.5 of the concerns, including about the appointment of the liquidator. And if I may just draw the Court's attention to that, this is at ER-2608, and also ER-2560 to 2561 for — for both funds. The — both the dissolution and the choice of the arbitrator, the process for appointing the arbitrator, were pursuant to 14.5 and 15.5's very broad grant to the arbitrator. The arbitrator, quote, shall also be authorized to grant any — any temporary, preliminary, or permanent equitable remedy or relief he or she deems just and equitable and within the scope of the agreement — this agreement, including without limitation an injunction or order for specific performance, end quote. And the critical point is to contrast what it says just a sentence or two earlier. When the parties meant to take something off the table, they full well knew how to do it, and they did it precisely when they said and agreed that, quote, the arbitrator shall not be authorized — shall not be authorized to what? To, number one, award non-economic damages, including pain and suffering, and, number two, to award punitive damages. My friend also refers to the provision saying to reform, modify, and mutually change the agreement. We agree, but there hasn't been any change of the agreement here at all. Well, so that gets me into the difference, because even if we adopt your argument under 10.2 that it isn't the only basis, there still is this provision that the general partner shall carry out the duties of liquidator. And where did the arbitrator draw that authority? Does that also come under Delaware law to — I think Your Honor captured it best when my friend was at the lectern. This is not even a dissolution under 10.2, which I think he has to agree with. But then he had the catch-all. Yes. Okay. Then it comes from 14.5 and 15.5, the very broad language and grant of authority I just read as contrasted with the language restricting the authority of the arbitrator to grant punitive damages or non-economic damages and Delaware law, longstanding Delaware law. So Delaware law gives authority to abrogate an agreement for the choice of the liquidator? I wouldn't say abrogate an agreement. The agreement supplements or gives authority broadly in 14.5 and 15.5. But the liquidator language is — I mean, I think you have a tougher argument on the liquidator language than you do under 10.2, because the agreement itself says that the general partner shall carry out the duties of the liquidator. I understand your point is that's only under 10.2. This isn't 10.2. But there is this sort of catch-all phrase where — Your Honor — Go ahead. Both a textual and a common-sense response or an equitable response. Let me start with a common-sense or equitable. It cannot be the case, as this Court said, that we're going to appoint the fox to guard the hen house or the funds here. Keep in mind, in a fully judicially confirmed arbitration award, there were detailed findings in a 227-page award about how the GPs were in it for themselves. They repeatedly and recklessly breached their fiduciary duties to us. We gave them $80 million. We made the entire contribution of capital to these funds back in 2015. And now the record shows $22 million left in the bank accounts for the GPs? Where did all the other money go? Even if we attribute some value to the portfolio companies, that doesn't get us anywhere close to this massive delta. Mr. Fitzgerald? Just factually here. So the arbitrator allowed the parties to try to agree on a liquidator? Correct. And that was unsuccessful? Correct. And your clients want Mr. Fitzgerald to be the liquidator now? Yes. Mr. Fitzgerald was appointed pursuant to the process and the terms of the appointment of the liquidator, which was set forth in the arbitrator's award and confirmed in full by the district court. The other side believes that Mr. Fitzgerald is exercising his powers as a liquidator in some improper way. Do they have any recourse? Can they go to the arbitrator? Can they go to the district court? Can they do anything? I believe if there were such incidents, there's no evidence of Mr. Fitzgerald behaving improperly, but were such a hypothetical to eventuate at some point in the future. I imagine the GPs very capable, a law firm would be before the district court inside of a hot second. And I'm trying to understand, is that an argument that goes to the district court in the first instance? Or can one go back to the arbitrator and say, we're carrying out your orders, but now we're having a disagreement about something else and we need you to get engaged? Is that issue actually arbitrable in the first instance? Or would they go to the district court? Because part of what I hear them saying is, we have a liquidator who's sort of, you know, can go off and do whatever he wants. I hear you saying that's not actually true. The liquidator will be bound by the normal duties of a liquidator to act in good faith and all the other things that one would expect of a liquidator. If they disagree with that, you would think they would have somewhere where they could raise that issue. I agree, Your Honor. They certainly could. I would have to think more, but I'm not certain whether this could go back to arbitrator Arif Haider Ali. Hopefully it could be, given his knowledge and familiarity with the case. I certainly think that this could be raised to the district court as well. And I would just— So you think it can be raised to somebody. We'd have to work out who, or you would have to work out who. There are obviously escape vows. It's not like Mr. Fitzgerald has unreviewable, unrestrained powers to do whatever he wants. But keep in mind, if it's any— But there's no answer that you know of standing here right now. Procedurally, what would happen? Whether you go back to the same arbitrator or whether a different arbitrator— Procedurally, I believe it would go back to the district court for resolution. Right. But if it were something totally— But then on the district court, then would then give it to another arbitrator, presumably? Or it could be sent back to arbitrator Ali, I think. I think my friend would say the functus officio doctrine, which— Just be covered by the arbitration agreement. I mean, it almost seems like we've escaped the agreement at this point. I mean, this would be like a claim, there's a liquidator set up, and if the liquidator violates the law, then wouldn't there just be a claim and say, like, you breached fiduciary duty as a new claim in the district court? Exactly. It could be a new arbitration claim, for example, or it could go back to the same arbitrator, I think. I suspect my friends would probably be back before Judge Gilliam again inside of a heartbeat if there were any concerns about the manner in which Mr. Fitzgerald was discharging his duties. But keep in mind, I do want to be clear on the facts. This was — it's almost three years ago, okay, that the arbitrator issued his final award, his 227-page award, on October 29, 2021. We're edging up on the third anniversary of this. And as this Court — But no liquidation. Correct. There's been no compliance, no reimbursement. He ordered reimbursement of funds to us and to the funds. They haven't complied at all. He ordered a detailed accounting. They haven't complied at all. Hold on. That's not their fault, though. That's not their fault. The district court stated this. I disagree, Your Honor. The stay was only partial. It did not stay certain aspects. And the stay was conditioned on their posting an $11.6 million bond. They haven't paid a dime either to us or to the court. They have not complied with or posted any kind of bond. As to the other conditions, I believe the district court only stayed without bond dissolution and not the other requirements to provide a detailed accounting after they lied to the Hong Kong High Court to try to obtain an ex parte order. Okay. Those issues aren't before us, though, correct? No. Actually, those issues are. The arbitrator required and ordered, and the district court confirmed, detailed accounting and reimbursement associated both with the Hong Kong — But you haven't challenged — you haven't challenged their failure to comply with that before us right now. Well, we've certainly pressed for and asked for compliance with it repeatedly. Any failure to comply issues, I'm — your clients — your clients are very well counseled. We've attempted — And I'm assuming to the extent that you have a compliance issue that you can litigate that you would bring that before the district court, right? We have attempted many times, Your Honor. That was the subject of the post-judgment actions. And if I may, just without casting aspersions on anyone here, Your Honor, as this Court explained in the Schoenduve decision, two-and-a-half years is already too long from when an arbitration award was issued. As this Court was crystal clear about it, arbitration should be, quote, swift and final. Disputes should not, quote, fester, even though the arbitrator rendered his decision two-and-a-half years earlier. We're past the two-and-a-half-year mark here. And, quote, seven years of litigation is not what Congress and the courts expect, end quote. The first arbitration was in 2017, seven years ago. And if I may just clarify the record on the process for the appointment of liquidator. As I was saying, October 29, 2021, the arbitrator issued his decision, including prescribing a procedure, the very process we followed to appoint Mr. Fitzgerald as the liquidator. The arbitrator ordered the parties to, within three months, i.e., by January 29, 2022, more than two years ago, to agree on the appointment of a liquidator, failing which the arbitrator, pursuant to longstanding Delaware authority and his broad ground of authority under 14.5 and 15.5 of the parties' contracts, gave us the power and not the FOX to guard the hen house that the very party adjudged to have repeatedly put their own personal interests out of ours. The arbitrator called this a residual inertial status quo that basically exists just to finance management fees for the GPs and the managing party. So you're asking us to affirm. And if it is affirmed, then what do you believe happens next? The parties in this case seem to have some difficulty agreeing on much. Thank you, Your Honor. Thank you for that question. We would respectfully ask this Court to promptly affirm and make clear that enough is enough, it is time for compliance, and that the dissolution that was ordered to have taken place by April 29, 2022, more than two years ago, happened finally within 60 days of this Court's judgment. We can't have this fester and drag on until the end of time. Back up. I don't know that we have authority to issue that kind of 60-day requirement. Actually, if I may speak to that, Your Honor, I believe Your Honor does. It's not just the Schoen-Doof decision. We also cited the Island Creek decision from the Sixth Circuit and the Telenor decision from the Second Circuit. In the Sixth Circuit decision, Island Creek, this Court or — I mean, sorry, not this Court, the Sixth Circuit, the sister circuit, required the appellant to, quote, make payment within 30 days from entry of the court of appeals' opinion. And in Telenor, Second Circuit, the Second Circuit affirmed a contempt order where the appellant disregarded the arbitration award's requirement of divestment from the joint venture within 120 days and ordered compliance with the share deposit and divestiture components of the arbitral award within eight days. Eight days. And one month for all argument. But the — okay. And I would also just point to this Circuit's decision in Lundgren and in Northrop that we cited that the law of the Circuit is that until arbitration awards are vacated, they are conclusive of the rights of the parties. And it should be the rule, rather than the exception, that when arbitrators hand down an award, the parties will comply with it without the necessity of court proceedings. This is turning the FAA and more than a century's worth of Supreme Court and Ninth Circuit precedent on its head with these never-ending shenanigans and taking advantage of — they are leveraging the long delay, the GPs, how long it takes for motions to be ruled on in the district court. And it's — it's — we are — we are approaching  Thank you, Your Honor. very much, counsel. You're over time, but we appreciate your argument. Your Honor, I ask why this matters, and I do want to answer that question. The simplest reason is because they control Mr. Fitzgerald by the terms of an agreement. And I'd point this Court's attention to page 1325 of the appendix, which says contractually they do control his decisions in how there's a liquidation performed. And China Fortune has candidly admitted that its plan is essentially to take all of the fund's assets for itself. That's pages 521 to 22 and 527 to 28 of the appendix. So there's no ambiguity here about what they plan to do in the liquidation. But if you think that's unlawful, can't you go to someplace and argue that? Certainly we would try, but there's no natural place for that to be done. A district court typically doesn't supervise the enforcement of an arbitration award. And certainly here we would say that it should. Certainly we would make that argument, and it appears, at least, my colleagues suggest we have an option to do that, although then they say it has to be done in 60 days, and we essentially have no ability to stop this from happening. And that's — and that's where these things are at cross purposes. It's certainly true that arbitration awards generally should be enforced quickly. But when you have a situation where the award essentially makes up a remedy that has no basis in the agreement, and that is incredibly ambiguous as to how it's going to be conducted, of course, then there's going to be further proceedings about how that's going to be conducted. And there's no way to really resolve that. You can't send it back to the same arbitrator who no longer exists as the arbitrator in the case. And — and we're left with a situation where a limited partner essentially just wants to take all of the assets for itself, and the district court would be forced to supervise that. That's not the way that the agreement works, and that's not the way arbitrations are supposed to be performed. All right. Thank you very much, counsel. Thank you. Arguments were very helpful today. We appreciate it. The matter is submitted.
judges: NGUYEN, NELSON, BRESS